v. Apple Inc., Ltd. v. Apple Inc., Ltd. v. Apple Inc., Ltd. Good morning, Your Honors. May it please the Court, Chris Granigan on behalf of the Appellant Firstface. The Court should reverse the Board's final written decision because the Board's findings on motivation to combine are not supported by substantial evidence. Now the claim at issue here, the claim term at issue, is what the parties have called the simultaneously limitations, which appear in both independent claims that are at issue here, Claims 1 and 9, in both, I'm sorry, Claims 1 and 9, in both essentially require that when a user presses what's called an activation button, the device simultaneously activates the display and performs a user identification function. Now the Board has construed the term simultaneously by the agreement of the parties as, and this is on page 9 of the appendix, as when a user just presses the activation button, both the user identification function and the switching from the inactive state of the display unit to the active state of the display unit are performed without additional steps. Now the Board, despite finding that none of the prior art individually disclosed this limitation, found that a person of ordinary skill in the art would have been motivated to combine references to achieve that claim limitation, and it found so on two grounds. I'll take the return. The first ground was based on a prior art reference called Fidel in view of another reference called Gagnerode. Now it's not disputed that neither Fidel nor Gagnerode discloses the simultaneously limitations. Fidel, for its part, is about embedding a sensor in a device itself to achieve authentication quickly and seamlessly. It is not about the timing of authentication relative to activating a display, which is what the claims of the 557 patent are about. To the extent Fidel says anything about the timing of authentication relative to turning on a display, it is in the context of figure 15 of Fidel, which is on page 792 of the appendix, and what it shows is a sequential authentication mechanism in which a user is only permitted access to restricted resources upon completion of authentication. Now the board found, and the appellees have not disputed, that in the case of Fidel, a display itself can be a restricted resource. So to the extent Fidel says anything about the timing of authentication relative to turning on a display, it's a sequential operation in which a user first authenticates and then is given access to the display. Gagnerode, the second reference under ground one, on the other hand, says nothing about activating a display. It is only about authenticating a user while powering on a device. And the board found that to be similar to waking up a device, right? The initial interaction between a user and a device, there's something analogous between waking up a device and turning on a device. It did, Your Honor, and we think that finding is not supported by substantial evidence. The reference in Fidel to talking about quickly and seamlessly authenticating a user whenever the user is turning on a device or unlocking a device or waking up a device, talking about Fidel, paragraph four, that statement by Fidel doesn't count as substantial evidence to support the board's finding that there is some kind of analogy between waking up a device and powering on a device? I don't think it does, Your Honor, and the reason is that Fidel, while it uses the term wakes here, it never anywhere else in its disclosure says what wakes mean, what wakes means. So we don't... That doesn't seem to be responsive to the question. The question is, why isn't turning on and off similar to changing from a sleep to a wake state? And I'm not saying that turning on a device is never similar to waking from a sleep state, but I think what we have to look at here is the reasons that the board and the appellees gave for finding a motivation to combine, and I don't think those are supported by substantial evidence. One of those... It's not supported by substantial evidence to say that turning on and off and waking are not similar? I don't... What I don't think is supported by substantial evidence is the fact that those might be similar don't give a person with a learning skill in the art a motivation to combine to change the exact timing mechanism of authentication relative to turning on a display of Fidel. And the reason... One of the reasons for that is that Fidel itself, as I stated earlier, already discloses a timing mechanism. Gagner, on the other hand, discloses a different timing mechanism. A person with a learning skill in the art would not be motivated to change the timing mechanism of Fidel in light of Gagner, given that both appear to already authenticated users successfully. Now I do want to come back to what Fidel says about waking, because the board seemed to take some inconsistent findings on Fidel. On the one hand, it found that we don't know what Fidel means by wakes. It never uses the term wakes beside in paragraph 4, and paragraph 4, by the way, is on 793, the appendix. What would be an alternative understanding of wakes the device, as that statement is used by Fidel, other than waking up a device from a sleep state? It could be waking a device from a sleep state, but I don't think that necessarily means that the screen itself is turning on. Now, of course, we all know today that when you wake a device, it usually turns on the I guess your burden is, you have to convince this court that it was unreasonable for the board to read the phrase wakes the device as meaning waking up a device from a sleep state. And why, therefore, is that an unreasonable reading by the board of the reference? Well, I don't think it's necessarily unreasonable to say that waking means waking from a sleep state. What I don't think is reasonable is the finding that waking necessarily has something to do with turning on the display. Fidel, again, it never uses the term wake besides paragraph 4. We don't know that wake has anything to do with turning on the display. It could be, for example, the device is on, but in some standby mode. Waking wakes it somehow, but it doesn't wake the display, it activates some kind of other function. So, again, we don't know what Fidel actually means by wake relative to turning on a device. And so I don't think the board could reach the conclusion necessarily that a person of combined the teachings of Gaggard and its timing of authentication. I don't recall, does your side have some expert testimony about how in the context of Fidel, what Fidel was meaning when it said wakes the device is something very likely different than what the board found wakes the device to mean in Fidel? I don't believe so that we have anything specifically beyond what is in our papers, if that makes sense. And I don't believe it appears in the appendix. If I may turn to the second reason that the board gave for finding a motivation to combine Fidel with Gaggaron, it was based on the similarity of the references of Fidel and Gaggaron and specifically that both relate to whether a user is indicating an initial interaction with the device and whether a user should be allowed to interact with the device. One, that was based solely on expert testimony. It wasn't based on any kind of evidence. But second, and I think more importantly, that motivation says nothing about the timing of authentication relative to turning on a display. It doesn't tell us that a person of ordinary skill in the art would be motivated to combine the timing of authentication relative to powering on a device with Fidel to achieve the specific timing of the claims of the 557 patent. Turning to ground two, which is Gertz in view of Herford. As with ground one, neither Gertz nor Herford discloses the simultaneously limitations. Gertz for its part, like Fidel, discloses a sequential operation in which a user presses a button, is prompted to authenticate, and then authenticates. So in this case, the screen turns on before authentication. In Herford, on the other hand, authentication occurs when turning on the device, like Gaggaron does. And Herford is actually explicit on this point. On page 1127 of the appendix, in column three, it says that there is a direct relationship between use, i.e. switching on, slash, off, and authentication. Again, we'd submit that the board erred by finding a motivation to combine Gertz with Herford. It found two bases for finding a motivation to combine. One, an express motivation in Herford based on Herford's statement that it allows authentication without additional effort for the user. Now this is just a goal. It doesn't tell us why a person of ordinary skill in the art would combine the references to achieve the specific timing considerations of the 557 patent. And I think there's a good reason why a person of ordinary skill in the art would not. Herford, for its part, as I said, it discloses that there's a direct relationship between use, switching on and off. And in fact, it discloses what it calls a renewed switch-on procedure, where if a user doesn't use the device for a specific period of time, it goes into a standby state. And then to re-authenticate, the user must engage in a renewed switch-on process, which would in fact require turning off the device and then turning it back on, which is a pretty convoluted process, and it would not make sense to combine that with Fidel to achieve limitations of the 557 patent. If there are no other questions, I'll reserve the remainder of my time for rebuttal. Okay. Thank you. Mr. Hall or Ms. Meyer. Thank you. May it please the Court. The only question on appeal with respect to the 557 is whether the Board had substantial evidence to find a motivation to combine, and because there were two entirely independent grounds on which the Board relied, petitioner or appellant, rather, would have to succeed as to both of them in order to prevail. The Board extensively discussed the motivation to combine over ten pages with respect to the first, over six with respect to the second, referring back to its earlier discussion. In the course of that extensive discussion, the Board cited and credited the testimony of Petitioner's Expert five times on pages 31, twice on page 34, 36, page 41, specifically with respect to the issues raised by Petitioner in their opening argument. The Board credited Dr. Bederson's statement that waking from a sleep state, as in Fidel, and powering on a device, as in Gagnerode, were analogous initial interactions, situations by virtue of what was known in the art, and in the reply brief, he actually cited further resource pain for that purpose, but also citing the fact that Fidel itself cites these three initial interactions, powering on, unlocking, and waking, in a single discussion of why it would be desirous to authenticate and turn the device on or wake or unlock very efficiently and quickly. And so this Court has said in the Acoustic Technologies case that the Board can rely exclusively on expert testimony if it's well-supported, and that is well-supported in this case, so that alone would be sufficient. The suggestion that figure 15 of Fidel is limiting the Board considered and rejected. It noted that Fidel specifically says that the screen may or may not be restricted, and the Board cited that appellant does not even discuss that discussion. Appellant's own expert acknowledged that Fidel was not about timing, so even if that embodiment was about a sequential thing, Fidel doesn't describe the timing, and the Board didn't rely on Fidel for the timing. The Board relied on Gagnerode. Gagnerode, over the course of three pages, three times specifically says that powering on and authenticating the fingerprint happened simultaneously or concurrently, as Gagnerode says. So the Board is relying on Gagnerode, which also puts together the scanner and the power on button for the simultaneously aspect, and relying on Fidel in light of iOS for the activating with use of the home button. And again, it's not just Fidel, because appellant wants only to talk about Fidel. They ignore that the Board on page 30 specifically cites to iOS, noting that iOS discloses that activating the home button is what switches the display screen from an inactive to an active state. So the similarities of the technology, each of which describes embedding the fingerprint scan with the button, the home button or the power on button, the similarities of what they're describing, these initial interactions with the device, and the fact that together they disclose that simultaneously when applying Gagnerode's teaching to Fidel is sufficient. With respect to the motivation, the Board relied on Fidel's own motivation in paragraph four, in which it recites the goal of quick and seamless authentication. But again, Fidel talks mostly about where to put the scanner, not about how to achieve that timing. Gagnerode comes along and says explicitly how to do that concurrently, and moreover says that doing so, time is saved, user friendliness is increased, and thus ties it all back together. The same goal that was recited by Fidel. That is more than sufficient to suffice under the substantial evidence standard. And with respect to the second ground, which was also well supported, I want mostly to just reference the fact that Appellant discussed their HERFIT disclosure, and with respect to its renewed switch-on process, the Board specifically credited Dr. Peterson's testimony that that would not have entailed powering all the way down in order to power back on. That would be defeat the purpose of a standby mode. A standby mode is meant to allow you to get back to activated status more easily. The Board credited that. That is more than sufficient. But also, more importantly, the Board did not rely on that, because the Court Board was relying on Gertz to disclose the activating with the press of the button. It was relying on HERFIT to disclose simultaneously. So unless the Court has questions, we rely on our brief. Thank you. Okay. Thank you. Mr. Reininghan, you've got four minutes here if you need it. Thank you, Your Honors. Just a couple of points. Counselor Liapeles mentioned expert testimony about the similarity of the references. That expert testimony, as I said in my opening argument, was essentially that both Fidel and Gagner wrote on the one hand, and Gertz and HERFIT on the other hand, are about fundamental human-computer interactions, and for that reason that they would be combined. The only thing that he cited in his initial declaration was his own say-so. It was conclusory testimony. He did, as counsel stated, come back with an additional reference that he says supported his position. But as the Board found, and this is on page 34 of the appendix, that new evidence showed only that issues pertaining to whether a user is granted access to a device when he or she indicates a desire to access it were well known in the art. That, again, says nothing about why a person of ordering skill in the art would be motivated to combine the references to achieve the specific timing of authentication relative to turning on the display that's claimed by the 557 patent. The one other thing that I wanted to respond to was the Board's finding that HERFIT's renewed switch-on process does not actually disclose turning the device off and all the way back on because it would defeat the purpose of standby mode. The Board did find that. That finding is wrong. It's inconsistent with HERFIT's statement that there's a direct relationship between use in authentication and switching on and off a device, and it would not defeat the purpose of standby mode. Stepping back a little bit, HERFIT is about a television in which a user can authenticate him or herself for fee-based services. So, for example, a TV channel that requires a subscription can access him or herself while turning on a device. After not using the device for a certain amount of time, the device can go into standby mode, in which case fee-based services, access to fee-based services would be cut off. HERFIT is explicit that if a user does not authenticate, the user can still get access to non-fee-based services. And so even if the user didn't authenticate in standby mode, there would still be access to these non-fee-based services. So for that reason, the standby mode in HERFIT does require, would require turning the device off and then back on to authenticate the user. Unless there are no further questions, we'd ask that the board reverse, I'm sorry, the court reverse the board's final written decision. Okay. Thank you. Thank both counsel. The case is submitted. I suggest you just keep your seats rather than switch tables.